IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

BAR J SAND & GRAVEL, INC.,
a New Mexico corporation,

    Plaintiff,

v.                                   No. CV-2015-00228 SCY/KK

FISHER SAND & GRAVEL CO.,
a North Dakota corporation, doing business
in New Mexico through its division
SOUTHWEST ASPHALT & PAVING,

    Defendant.

**BAR J SAND & GRAVEL INC.'S MOTION TO COMPEL FULL AND COMPLETE RESPONSES TO ITS THIRD SET OF REQUESTS FOR PRODUCTION AND <u>TO OVERRULE FRIVOLOUS OBJECTIONS</u>**

Plaintiff and Counterclaim Defendant Bar J Sand & Gravel, Inc. ("Bar J S&G"), pursuant to Fed.R.Civ.P. 37(a) and D.N.M LR-Civ 37.1, hereby submits this Motion to Compel Full and Complete Responses to Bar J S&G's Third Set of Requests for Production and to Overrule Frivolous Objections.[1] Prior to filing this Motion, Bar J S&G sent correspondence to Fisher's attorneys pointing out the inadequacies and insufficiencies in the responses and pointing out the relevance of certain items. (*See* **Exhibit B**). The parties agreed to two extensions of time regarding the filing of this Motion to allow more time for Fisher to send a response to the May 3, 2017 letter and indicating that Fisher's counsel needed more time to respond due to the press of other matters.

---

[1] Fisher served its responses to Bar J S&G's third set of requests for production on May 1, 2017. (*See* **Exhibit A** (Fisher's responses to Bar J S&G's Third Set of Requests for Production)). On May 3, 2017, Bar J S&G's counsel wrote to Fisher's counsel in a good faith attempt to avoid this Motion to Compel explaining the deficiencies in the responses. (*See* May 3, 2017 correspondence, attached as **Exhibit B**). Although promised a written response to the May 3, 2017 letter on or prior to June 19, 2017, no written response or any other response has been received to that May 3, 2017 correspondence from Fisher until 2:50 p.m. on June 22, 2017, after this Motion was substantially written. That Fisher letter produced no additional documents nor did not supplement any of the responses to the requests.

The two extensions of time were confirmed in Orders by this Court. Having received no response to the correspondence until after this Motion was substantially drafted and no further production or supplementation to the requests has been made, Bar J S&G files this timely Motion to Compel.

**I.     Introduction.**

In this case, Bar J S&G claims that Fisher breached the Exclusive Supply Agreement (ESA) in several ways, seeks a number of declaration of rights under the Agreement, and as an alternative Count, alleges (to the extent Fisher should prevail on one defense and counterclaim wrongly alleging that the ESA was not renewed) that Fisher had in fact negligently or intentionally misrepresented its intent to renew the ESA. Fisher (despite its explicit agreement to renew the ESA and its having continued to operate under the ESA subsequent to the expiration of the initial term) has plead a number of counterclaims against Bar J S&G. Fisher has claimed it did not renew the ESA and has claimed as a defense and in counterclaims that the reason for its non-renewal was a downturn in the economy that made it unable to meet the minimum tonnages purchase requirements of the ESA. In addition, in the counterclaims, Fisher alleges that it has been damaged in the amount of the value of the stockpiled material it chose to abandon when the Pueblo refused to renew the lease between the Pueblo and Bar J Trucking. Bar J S&G is entitled to complete responses to the discovery requests in order to address Fisher's defenses to Bar J S&G's claims, to mount a defense to Fisher's counterclaims, and to address Fisher's damages requests. Fisher objected to all eight of the requests. On only one, Request for Production No. 34, did Fisher produce any documents. As to the remaining seven requests, Fisher made numerous kitchen sink type objections, including attorney/client privilege and attorney work product but yet failed to produce a privilege log as to any responsive documents from which any privilege could be verified. Furthermore, Fisher has thus far refused to provide any good faith response and has refused to

engage in any good faith conference in an attempt to work out the disputes. Nor has Fisher suggested any way to make a production that in Fisher's mind would be less burdensome and yet would satisfy the needs of Bar J S&G in this lawsuit. Fisher has filed no motion for protective order.

### REQUEST FOR PRODUCTION NO. 33

Request for Production No. 33 asked Fisher to produce its expert reports tendered to the defendant in *Fisher Sand & Gravel Co. d/b/a Southwest Asphalt Paving and Fisher Sand & Gravel – New Mexico, Inc. v. FNF Construction, Inc.* (the "FNF case"). The FNF case was a prior case Fisher was involved in. Fisher, in that prior lawsuit, claimed that its reputation was damaged in New Mexico and that it sustained losses and damages due to that damage to reputation in New Mexico. In this case, covering some of the same time periods involved in that case, Fisher claims that it could not meet its minimum tonnages purchase requirements because there was a downturn in the economy. If in fact it was not a downturn in the economy but a conscious decision by Fisher to increase its damages in the prior FNF case (and thus, its inability to sell product successfully was in fact caused by a damage to its reputation) that would show Fisher's defenses in this case and its reasons given to Bar J S&G for some new contract were not honest and not accurate. This evidence would be probative regarding Fisher's claims that it attempted to negotiate a new contract in good faith and Bar J S&G did not act in good faith. Furthermore, the expert reports would clearly indicate the damages to reputation Fisher was claiming, which is, or could lead to admissible evidence in this case as to the true basis for the damages Fisher is claiming in this case. These damages could have been from the actions of FNF, not Bar J S&G, and Fisher may have already been recompensed for those damages. The expert reports were given to FNF and therefore, could not be work product protected or attorney/client privileged. Further, there is a

Confidentiality Order in this case which would protect those opinions from being released except in accordance with the Order. Although, Fisher argues that the request for production was broad enough to encompass expert reports prepared by non-testifying experts, Bar J S&G does not believe that the request called for such reports but specifically indicated in its May 3, 2017 letter (**Exhibit B**) that it was not seeking non-testifying expert reports and was seeking only these reports that were given to FNF in the case.

There being no good faith basis for any objection or failure to produce the requested documents, Fisher should be ordered to do so immediately and the objections stricken.

## **REQUEST FOR PRODUCTION NO. 35**

Request for Production No. 35 asks that Fisher produce the jobs in New Mexico it was the successful bidder on for the period of 2007 through 2014. Once again, Fisher made a plethora of objections. None of the objections are explained and there was no attempt to indicate an alternative means to produce information that would allow Bar J S&G the discovery it needs. Fisher took the position that in 2012 it experienced a downturn in the economy. If in fact Fisher was the successful bidder on an equal amount of bids involving sand and gravel in each year during the period of 2007 through 2014, this would refute Fisher's downturn in the economy contention. The information is clearly relevant and important to Fisher's defense and Fisher's veracity in taking the position regarding the economy and its veracity in dealing with Bar J S&G in negotiations. Bar J S&G should be entitled to that information. The information is, or should be, public knowledge, but if there is any attorney/client privilege information, there should have been a privilege log produced. There was none. The documents may well show what the prices of each commodity Fisher was selling in each year and thus, would be responsive to Request for Production No. 40.

4

Fisher should produce all of the documents requested as the discovery is clearly relevant or reasonably calculated to lead to the discovery of admissible evidence and are not subject to any privilege or protection. Furthermore, to the extent any of those documents contain confidential information, there is a Confidentiality Order in this case.

**REQUEST FOR PRODUCTION NO. 36**

Request for Production No. 36 requests production of documents reflecting a breakdown of revenue/gross income for Fisher's sales in New Mexico. Once again, this is directly relevant to the issue of whether Fisher is being truthful about the effect on Fisher of the alleged downturn in the economy in the years 2012 through 2014. It may also show reasons why Fisher was not as successful in certain years in New Mexico, other than due to a downturn in the economy. To the extent any of the documents contain confidential information, there is a Confidentiality Order in place. To deal with the request about Fisher entities that are not parties to this lawsuit that is a false issue. Fisher, during relevant time periods set forth in the request, did business in New Mexico first as the entity involved in the case who contracted with Bar J S&G. Subsequent to the 2007 time period, but still during the relevant time period, Fisher began acting through two companies, which Fisher at times claims are independent entities. (Southwest Asphalt & Paving and Fisher Sand & Gravel – New Mexico, Inc.). It would be unfair to limit the request to just the entity in the lawsuit, if the reason Fisher was not as successful in the later years was because Fisher let its subsidiaries, or newly formed corporations, take the work from the Fisher that is the Defendant in this lawsuit.

There being no good faith basis for objection and the documents sought are reasonably calculated to lead to the discovery of admissible evidence, the Court should require and compel production and strike Fisher's objection.

## **REQUESTS FOR PRODUCTION NO. 37-39**

Requests for Production Nos. 37-39 each relate to matters raised during the deposition of Thomas Fisher, Fisher's President. Apparently, Fisher got into some kind of dispute or disputes with purchasers of sand and/or gravel, which was produced out of the San Felipe pit (the subject of the ESA). These disputes likely affected Fisher's ability to be more successful in those years and would refute Fisher's "downturn in the economy" allegations. Bar J S&G should have a fair opportunity to assess the impact of Fisher's "disputes" had on its ability to sell out of the pit as opposed to the contention that the effect was a downturn in the economy.

More specifically, as to Request for Production No. 38, which asks about an actual dispute and/or litigation between a concrete ready-mix supplier and Fisher, all of the documents in Fisher's possession cannot and would not be attorney/client privileged. Fisher should have produced all of the filings in the case and/or any documents that went back and forth between the two sides of the ready-mix supplier and Fisher in the dispute. None of those documents would have been privileged or protected. If Fisher's losses were due to the ready-mix supplier failures, that is relevant to the issues regarding Fisher's downturn theory. The ready-mix supplier defenses are likely to produce admissible evidence in this case as to the true reasons why Fisher was unable or unwilling to sell more product out of the mine. Perhaps Fisher was not acting in accordance with its contract with the ready-mix supplier. This also could lead to admissible evidence. Fisher has taken the position in its counterclaims that it was required to, at the very least, use its "best efforts" in terms of production out of the San Felipe mine. If it was in fact taking unreasonable positions in the lawsuit and/or dispute with the ready-mix supplier, then it was not using its best efforts with regard to its contractual objections with Bar J S&G.

In the May 3, 2017 letter, Bar J S&G's counsel indicated that it was unclear what the "overly broad" objection was but asked Fisher to provide some way of narrowing the request but still providing the information regarding sales in each year to that ready-mix supplier and also suggest if they would produce a privilege log, we could discuss further ways of narrowing the request. No response was provided until this Motion was substantially completed and there were no documents produced. To the extent the objection is that it encompasses confidential or proprietary business information, there is a Confidentiality Order in this case.

The Court should compel production of these items and strike the objections.

**REQUEST FOR PRODUCTION NO. 40**

Request for Production No. 40 asks for all pricing or schedules for all products and commodities sold out of the Pueblo of San Felipe sand and gravel pit during the time period from 2007 through 2014. The only objection Fisher has made to this request is that the request is not reasonably calculated to lead to the discovery of admissible evidence. That is simply not true and Fisher knows it. For one thing, Fisher has claimed as a damage the value of the stockpiled material that it chose to abandon at the pit. Fisher has never disclosed what values they placed on each of the commodities for such a damage calculation. Furthermore, Fisher has tendered a disclosure of Mike Moehn to indicate the value of the stockpiled material at the time Fisher abandoned the stockpiles. While we do not believe that this disclosure is adequate or proper and is now subject of a motion to strike, it seems obvious to us that to place a value on the products and commodities that were left on the premises, Mr. Moehn would clearly have had to utilize the sales price of those commodities.

Prior years pricing would also be relevant and reasonably calculated to lead to the discovery of admissible evidence as Fisher has claimed that it was not profitable for it to sell the

commodities in certain years sufficient to meet the minimums.  Working backward from the selling price of each product and applying their cost of production factor along with the royalty would likely prove or disprove this contention by Fisher.  If the issue was Fisher's pricing its products at such high prices that was causing a decline in the amount of tonnages Fisher could reasonably sell, then it was not be a downturn in the economy, but, in fact, an intentional act by Fisher which was causing the reduction in the amount of production and sales that Fisher was accomplishing.

Furthermore, Fisher had almost 600,000 tons of stockpiled material as of the end of December, 2011.  The value of each of the commodities that were stockpiled is probative of the issues in this case, including whether Fisher would have abandoned those stockpiles in 2012 or whether it did indeed agree to renew the ESA for the option period so that it would not have to abandon those valuable resources at the end of the initial term of the ESA.  Such calculations will be easily accomplished once we know the prices for each of Fisher's materials.

Fisher should be required to give us documents that indicate the pricing of all commodities sold out of the Pueblo of San Felipe from 2007 through 2014.  This could be done very easily if Fisher has price lists for each year.  Fisher now, for the first time, on June 22, 2017 has indicated that no such lists exists.  If Fisher is being truthful, then the source documents, such as sales invoices during the relevant time period, should be produced.  From these invoices, Fisher's sales prices can be easily gleaned.

Obviously, Fisher knows its pricing at various times because Mr. Dave Olsen was able to give reasonable estimates of the price of certain commodities in his deposition at a particular point in time.  (*See* D. Olsen Depo. at pp. 50-52, attached as **Exhibit C**).  It would seem logical that a big company like Fisher closely monitors its commodities so that it can establish whether it is making a profit and, if so, on what products.  Further, Fisher can determine whether to increase

8

prices of those commodities that are selling and reduce the price of those commodities not selling as well.

The information sought in the requests are clearly relevant to issues in this lawsuit and Fisher should be compelled to produce those documents.

**II.     Conclusion.**

Defendant's throwing every objection they can think of, including the kitchen sink, is an improper way to address legitimate discovery requests.  Fisher has not responded in a timely fashion to the May 3, 2017 good faith letter nor has it tried to work out discovery difficulties.  This motion to compel is made necessary by Fisher's conduct.  The requests are not difficult to understand and are specific to the case.  The requests could have easily been complied with in a very short amount of time.  We request that Fisher be ordered to immediately produce the documents and for the Court to grant whatever further relief the Court may deem appropriate.

Respectfully submitted,

ATKINSON, BAKER & RODRIGUEZ, P.C.

*/s/ Douglas A. Baker*
Douglas A. Baker
201 Third Street NW, Suite 1850
Albuquerque, NM 87102
Tel:  (505) 764-8111
Fax: (505) 764-8374
dbaker@abrfirm.com

*Attorneys for Plaintiff/Counterclaim Defendant*

**CERTIFICATE OF SERVICE**

   I HEREBY CERTIFY that on the 22nd day of June, 2017 I filed the foregoing *Bar J Sand & Gravel, Inc.'s Motion to Compel Full and Complete Responses to its Third Set of Requests for Production and to Overrule Frivolous Objections* electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Timothy C. Holm
Jeremy K. Harrison
Modrall, Sperling, Roehl, Harris & Sisk, P.A.
P.O. Box 2168
500 Fourth St. NW, Suite 1000
Albuquerque, NM 87103-2168
Tel: (505) 848-1800
Fax: (505) 848-9710
tch@modrall.com
jkh@modrall.com

*Attorneys for Defendant/Counterclaim Plaintiff*


ATKINSON, BAKER & RODRIGUEZ, P.C.

 */s/ Douglas A. Baker*
Douglas A. Baker