## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

BAR J SAND & GRAVEL, INC.,
a New Mexico corporation,

       Plaintiff,

v.                                     No. 1:15-cv-00228-SCY-KK

FISHER SAND & GRAVEL CO.,
a North Dakota corporation, doing business
in New Mexico through its division
SOUTHWEST ASPHALT & PAVING,

       Defendant.

### RESPONSE TO BAR J S&G's MOTION TO STRIKE

As a result of Bar J S&G's actions, Fisher was forced to abandon nearly three-hundred-thousand tons of valuable materials that Fisher had expended time and money into producing at the San Felipe Mine.  Fisher is seeking compensation for that loss.  The calculation of Fisher's loss is simple, and is an issue of fact. Fisher has utilized two different calculations—a calculation based on the production costs that Fisher incurred in producing the materials and a calculation based on the sale value of the materials.[1] These damages are based on factual information that was provided to Bar J S&G long ago. These damages do not require expert testimony. But out of an abundance of caution, Fisher disclosed its Vice President, Michael Moehn, as an employee expert who will discuss Fisher's damage. Bar J S&G now complains that Fisher's disclosure was somehow deficient.  Bar J S&G is wrong.

---

[1] It is for the finder of fact to determine which measure of damages is appropriate.

## BACKGROUND

### A.  General Background

Fisher conducted a mining operation at the San Felipe Mine—a piece of property owned by the San Felipe Pueblo but leased to Bar J Trucking (a company affiliated with Bar J S&G).  In order for Fisher to operate the Mine, the existence of a valid lease between Bar J Trucking and the San Felipe Pueblo was essential.[2]  In early 2013, Bar J S&G represented to Fisher that Bar J S&G had a lease with the San Felipe Pueblo for an additional ten years.  As a result of this representation, Fisher continued to operate the San Felipe Mine with the expectation that it would be able to continue selling products into the future.  Unbeknownst to Fisher, but well-known to Bar J S&G, the lease with the San Felipe Pueblo was actually in serious jeopardy and certainly had not been renewed.  Unaware of these issues, Fisher conducted business as usual—mining and producing materials for sale and stockpiling materials to ensure that adequate product was on hand to meet any customer needs.

In August 2014, Bar J S&G finally told Fisher what Bar J S&G had known for some time—that Bar J Trucking's Lease with the San Felipe Pueblo was not being renewed and that Fisher needed to wrap up all operations at the Mine by January 2015.  Between the date of the misrepresentation and the date on which Fisher learned about the end of Lease between the San Felipe Pueblo and Bar J Trucking, Fisher produced and stockpiled saleable materials.  Had Bar J S&G advised Fisher of the serious issues with the Lease, or had Bar J S&G not represented to Fisher that it had the Lease for the next ten years, Fisher would have converted its operations to an on-demand process rather than continue to produce materials on a regular basis, could have made arrangements to move materials to an off-site location, and otherwise could have ensured

---

[2] During the relevant time periods, Fisher was unaware that there was a distinction between Bar J S&G and Bar J Trucking, and was lead to believe that Bar J S&G in fact held the lease with the San Felipe Pueblo.

that nothing was left behind when operations ceased.  In other words, but for Bar J S&G's acts and omissions, Fisher would not have had a large stockpile on hand at the time that operations ceased in January 2015.  But because Bar J S&G chose to misrepresent the status of the Lease, Fisher was forced to leave behind 295,321 tons of aggregate when it left the San Felipe Mine in January 2015.

### B.  Background of Damages Disclosures

In its Initial Disclosures, which were served on Bar J in May 2015, Fisher identified the damages it is seeking by noting that its

> year-end inventory as of December 31, 2014 (the inventory that Fisher was forced to abandon) was 295,321 tons of aggregate. The average cost of the aggregate was $8.64 per ton. The average market value of the aggregate was $10.48 per ton. Using a market value approach, Fisher's damages for the loss of the stockpile are $3,094,964.08. Using a cost basis approach, Fisher's damages for the loss of the stockpile are $2,551,573.44.

Initial Disclosures, attached as Exhibit 1. Fisher produced with its Initial Disclosures documents from which those calculations were based—inventory sheets demonstrating the number of tons of aggregate, the production cost, and the average market value. *See* Bar J Sand #193 Commercial Pit -81, attached as Exhibit 2. The calculation of damages is exceptionally simple— and requires merely multiplying the number of tons Fisher was forced to abandon by the production cost or the value.

In August 2015, Bar J served a Notice of Rule 30(b)(6) deposition in which Bar J sought, among other things, a witness "to provide Fisher's complete knowledge and factual support for any damages Fisher is claiming from Bar J S&G." Rule 30(b)(6) Notice, attached as Exhibit 3. On October 12, 2015, Fisher produced Michael Moehn, Fisher's Vice President, to testify regarding that and other topics.  With respect to damages, Mr. Moehn testified that Fisher's monthly production reports contain an average production cost which is "the average cost for the

composite, because we just do average cost divided evenly through all products" and that the

average "would take the total cost of all products, and divide it by the total tons produced, of all

products." M. Moehn Depo. at 294:1-20, attached as Exhibit 4.

Bar J S&G's counsel asked numerous specific questions regarding Fisher's damages and

the manner in which they were calculated, and Mr. Moehn gave specific testimony regarding

Fisher's damages:

> Q. All right. Tell me -- one of the topic areas, I think it's the final one, is damages. Tell me how Fisher has calculated its damages in this case.
> A. I believe they're presented in two ways: on a market value of the aggregates, or a cost basis of the aggregates. I believe those are the two numbers shown.
> Q. Okay. And what would the market value mean?
> A. It would be the average selling price, multiplied by the number of tons of material.
> Q. So we could look at that sheet, for example, in 2014 and see what the average selling price was?
> A. Yeah, and that would be the market value, if you took tons times that.
> Q. That would be market value. And then the other number that we looked at, which was the cost of production, would that be the number that we would use for the other approach?
> A. Correct. It would be the cost of that per ton, times the number of tons.
> Q. All right. Now, why did you use that as your damages?
> A. It would be the value of the inventory that we lost.
> Q. Okay. Why? Why does that make sense, to say that's a damage for any of your legal theories and claims against Bar J Sand & Gravel?
> A. Well, that, I believe, is the damage that we incurred. I mean, we lost that portion of the business and we lost the personnel. We didn't go into that; we simply said we had that material stockpiled. It was based on understanding that there was going to be a continuing
> lease, which there wasn't, and we feel we lost that material, and that's why the basis for the damage.

M. Moehn Depo. at 316:17 to 318:24.  Mr. Moehn was asked further questions about Fisher's

damages and his calculation of those damages:

> Q. All right. So why do you think -- in layperson terms, why does Fisher think that the market value or production value is an appropriate measure of damages for what you allege Bar J Sand & Gravel did?
> MR. HOLM: Form.
> A. The production value is literally the amount we lost for it. The market value is the value of the material. I think, in reality, you'd have to add the royalty into that, so it probably equates right back to the production value. So the closer value is probably the production value. *Id.* at 326:10-21.

Bar J S&G had a full opportunity to question Mr. Moehn about Fisher's damages, the manner in

which they were calculated, and the facts that support the damages.

### C.  Fisher's Expert Disclosures

Fisher's damages—both the amount of the damages, the manner in which they were calculated, and the basis of the damages—are not an issue that needs expert testimony.  The amount of Fisher's loss is a simple calculation.  But Fisher decided, out of an abundance of caution, to disclose Mr. Moehn as an employee expert under Rule 26(a)(2)(C) to avoid any argument by Bar J S&G that the simple factual issue actually required an expert. Fisher thus served an expert disclosure identifying Mr. Moehn as an expert in accordance with the Court's scheduling order. *See* Expert Disclosure, attached as Exhibit A to Bar J S&G's Motion. While Fisher maintains that expert testimony is not necessary on Fisher's damages because they are based solely on factual information and do not require knowledge outside the scope of ordinary experience, Fisher identified Mr. Moehn as a potential expert and noted that he may

> [t]estify regarding the amount of damages that Fisher sustained as a result of having been forced by Bar J S&G to abandon a large stockpile of materials in or around January 2015.  Specifically, Mr. Moehn will testify about the value of the inventory that Fisher was forced to abandon as well as the economic losses incurred by Fisher.
>
> Mr. Moehn will testify that the value of the inventory that Fisher was forced to abandon was $3,094,964.08. Mr. Moehn's testimony regarding the value of the inventory is based on his knowledge of the materials that were abandoned and the value of those materials.
>
> Mr. Moehn will testify that Fisher's economic losses were $2,551,573.44. Mr. Moehn's testimony regarding Fisher's economic losses is based on his knowledge of the costs associated with the production of the materials that were abandoned as well as the amounts of the materials.

*See* Fisher's Expert Disclosures, attached as Exhibit 5.  Importantly, these damages are the exact same damages that Fisher disclosed in its Initial Disclosures and which Bar J S&G had a full and fair opportunity to question Mr. Moehn about in October 2015. Despite having long known the basis of Mr. Moehn's testimony and in fact having deposed Mr. Moehn on the basis of his calculation of Fisher's damages, Bar J now feigns ignorance of the basis of Mr. Moehn's

testimony and argues that he should be barred from testifying.  But, to the extent that expert testimony is even required on the damages question, Mr. Moehn has been adequately disclosed as an expert and Bar J S&G is well-aware of the factual basis of Mr. Moehn's testimony.

## DISCUSSION

### A.  Bar J S&G's Motion Should Be Summarily Denied Due to Bar J S&G's Failure to Comply With the Local Rules of Civil Procedure

As an initial matter, Fisher notes that Bar J S&G failed to comply with local Rule 7.1(a), which required Bar J to "determine whether a motion is opposed" and to set forth a recitation of a good faith request for concurrence in the motion. *See* D.N.M. LR-Civ. 7.1(a).  Shockingly, despite having failed to confer with Fisher, Bar J S&G asks the Court to award the attorney's fees Bar J S&G incurred in drafting and filing its utterly unnecessary motion.  Had Bar J S&G contacted Fisher regarding this Motion, as Bar J S&G was required to do, Fisher would have advised Bar J S&G that the supposed deficiencies in Fisher's expert disclosures do not in fact exist since Fisher disclosed the basis of Mr. Moehn's testimony at the inception of this case and since Bar J S&G *already deposed* Mr. Moehn on this topic.  Had Bar J S&G complied with its obligations under Local Rule 7.1(a), Fisher could have explained to Bar J S&G that Mr. Moehn is in fact giving factual testimony regarding damages and that he was only disclosed as an expert out of an abundance of caution. Had Bar J S&G complied with the local rules, Bar J S&G perhaps would not have needed to waste the Court and Fisher's time with this unnecessary and frankly frivolous Motion to Strike.  Pursuant to Rule 7.1(a), the Court can and should summarily deny the motion.  To the extent the Court is inclined to award fees associated with this issue, it is Fisher, not Bar J S&G, that should be awarded fees.

**B. Mr. Moehn's Testimony Regarding Damages is Factual, and Any Supposed Deficiencies Related to Fisher's Disclosure Has No Bearing on His Ability to Testify About His Factual Knowledge of Fisher's Damages**

Under New Mexico law, a party seeking damages has the burden of proving those damages with reasonable certainty. *See Sandoval v. Baker Hughes Oilfield Operations, Inc.,* 2009-NMCA-095, ¶ 25, 146 N.M. 853. There is no requirement that damages be proven by expert testimony, as damages only need be proven by "the evidence adduced at trial."*Jacobs v. Meister*, 1989-NMCA- 033, ¶37, 108 N.M. 488.  Mr. Moehn's testimony regarding Fisher's damages does not involve opinion or expert-level calculations.  Instead, it is factual testimony based on the amount of materials Fisher was forced to abandon and either (1) the value of those materials (which is based on Fisher's internal tracking of sales) or (2) the cost Fisher incurred in producing those materials.  This is not a complex issue that requires expert testimony.

Even if the Court were to conclude that Mr. Moehn's damages testimony is opinion testimony (which it is not, since Mr. Moehn is simply testifying about his personal knowledge of the losses Fisher sustained), his testimony falls within Rule 701. Rule 701 of the Federal Rules of Evidence provides that "[i]f a witness is not testifying as an expert, testimony the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Mr. Moehn's damages testimony, to the extent it even is an opinion, fits squarely within this rule. His testimony is based on his personal knowledge of Fisher's operations at the Mine, it is helpful in determining a fact in issue (Fisher's damages), and it is not based on any scientific, technical, or other specialized knowledge.  Mr. Moehn's testimony thus should not be excluded on account of a supposed deficiency in Fisher's expert disclosure.

### C.  Mr. Moehn Was Not Required To Provide A Written Report

Even if Mr. Moehn's testimony is expert testimony, his testimony should not be excluded. Bar J S&G first asserts that Mr. Moehn was obligated to provide a written report. Bar J S&G is wrong. Under the Federal Rules of Civil Procedure, there are two categories of expert witnesses—those who must provide a written report as set forth in Rule 26(a)(2)(B) and those who do not need to provide a written report as set forth in Rule 26(a)(2)(C). *See Farris v. Intel Corp.*, 493 F.Supp.2d 1174, 1179 (D.N.M. 2007). The language of Rule 26(a)(2)(B) is clear and unequivocal. Expert reports are *only* required if "the witness is one retained or specially employed to provide expert testimony in the case or on whose duties as the party's employee regularly involve giving expert testimony." Fed.R.Civ.P. 26(a)(2)(B). Mr. Moehn, the Vice President of Fisher, is not a retained expert, he was not specially employed to provide expert testimony, and his duties for Fisher do not regularly involve giving expert testimony. Rather, his duties involve managing Fisher's New Mexico business including the mining operations at issue in this case.  Mr. Moehn was actively involved in all aspects of the operation of the Mine, including but not limited to the sales prices, the financials, and the production. *See e.g.* Deposition of Dave Olson, relevant excerpts attached as Exhibit 6**,** at 24:16-19 (testifying that Mr. Moehn was responsible for renewal issues); 52:4-14 (testifying that Mr. Moehn "had a lot to do with the pricing of the material"); 56:14-21 (testifying that Mike Moehn was involved in assessing decreased sales volumes): 57:23-24 ("I don't track the financials. Mike Moehn does that"); 59:3-8 ("Mike would kind of review it, and he would tell me that we are getting too much inventory out there and that I needed to cut back on production and possibly shut the pit down for a little while, or do whatever we need to"); 118:7-8 (in response to questions about production reports, testifying "I don't know. Mike Moehn is the guy that takes care of the

financials").[3] Mr. Moehn's testimony regarding Fisher's damages—testimony based on sales figures, production costs, and production—is thus based on personal knowledge.

Bar J S&G contends that Fisher had the obligation—at some unidentified point in time— to establish that Mr. Moehn was not specially employed to provide expert testimony or that his duties do not regularly involve giving expert testimony. *See* Motion at 3-4. But, Rule 26 imposes no such burden.  Bar J S&G's primary support for its assertion is a District of Colorado case, *Alarid v. Biomet, Inc.*, 2015 U.S. Dist. LEXIS 136878, *9-10 (D.Colo. Oct. 7, 2015), in which the court noted that *the District of Colorado's* practice is to employ a burden shifting framework under which the moving party *first* establishes that the disclosing party failed to comply with Rule 26(a)(2)(B) and the non-moving party then establishes that "the witness was not required to provide a report as contemplated by Rule 26(a)(2)(B)." Bar J S&G cites to no such requirement imposed by the Rules of Civil Procedure, the Local Rules of Civil Procedure, the District of New Mexico, the Tenth Circuit Court of Appeals, or the United States Supreme Court.

Even if the Court were to apply the burden-shifting framework used by the District of Colorado, Bar J S&G has failed to show that Mr. Moehn was specially employed to provide expert testimony or that his job duties regularly involve giving expert testimony. Mr. Moehn has personal knowledge of Fisher's losses as the Vice President of Fisher, and is thus qualified to give testimony about those losses without providing an expert report. *See generally Malloy v. Monahan*, 73 F.3d 1012, 1016 (10th Cir. 1996) (concluding that knowledge of business and high level position within company constitutes "sufficient expertise and personal knowledge of the company to render" an opinion on lost profits). As explained above, and as testified to by Mr.

---

[3] Bar j S&G is well-aware that Mr. Moehn was personally involved in all aspects of the mining operation, but from its interactions with Mr. Moehn during the course of the parties' relationship and from testimony provided at the depositions in this case. Bar J S&G's assertion that Mr. Moehn intends to testify about issues outside his personal knowledge is thus utterly inappropriate and belied by the facts that have been known to Bar J S&G since prior to the inception of this litigation.

Olson, Mr. Moehn was personally involved in all aspects of the mining operation at the Mine, including but not limited to the financial issues (production costs, sales prices, and volumes) that are at issue in Bar J S&G's Motion.  Simply put, Mr. Moehn is not subject to Rule 26(a)(2)(B).

### D.  Fisher's Expert Disclosure was Sufficient

As noted above, Fisher disclosed Mr. Moehn as an employee expert out of an abundance of caution and in an attempt to avoid unnecessary litigation. Fisher's concern was that Bar J S&G would claim that Fisher's damages required expert testimony (despite it clearly being a factual issue that requires only lay testimony).  By disclosing Mr. Moehn as an employee expert in addition to disclosing him as a fact witness, Fisher sought to head off unnecessary briefing on whether expert testimony was required.   But, Bar J S&G found a way to create additional briefing anyway, and challenges the sufficiency of Fisher's disclosure.   Rule 26(a)(2)(C) provides that for witnesses who are not required to provide a written report, a party need only disclose "the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705" and "a summary of the facts and opinions to which the witness is expected to testify." Fisher provided this information in its Expert Disclosure by disclosing the subject of Mr. Moehn's testimony (Mr. Moehn "will testify regarding the amount of damages that Fisher sustained . . . the value of the inventory that Fisher was forced to abandon . . . as well as the economic losses incurred by Fisher") and the factual basis of his testimony ("Mr. Moehn will testify that the value of the inventory that Fisher was forced to abandon was $3,094,964.08" which is based on "his knowledge of the materials that were abandoned and the value of those materials"). *See* Exhibit A to Bar J S&G's Motion.

The rule provides no guidance on the level of detail that must be provided in the summary, but the committee commentary cautions that "[c]ourts must take care against requiring

undue detail." Fed. R. Civ. P. 26(a)(2)(C) advisory committee's note (2010 amendments). Numerous courts that have considered the scope of the rule have recognized that disclosures nearly identical to Fisher's are sufficient, as precise details regarding an expert's testimony are not required as long as a generally summary of the testimony is provided. *See e.g. Little Hocking Water Ass'n v. E.I. Du Pont de Nemours & Co.*, 2013 U.S. Dist. LEXIS 180627, *19 (S.D.Ohio Dec. 27, 2013) (concluding that brief summaries of expert opinion without a "precise description or undue detail" are sufficient and noting other cases that have held the same); *Nicastle v. Adams County Sheriff's Office*, 2011 U.S. Dist. LEXIS 158850, *2-3 (D.Colo. May 3, 2011) (concluding that disclosure of "experience as a Sheriff" and "experience in making personnel decisions" were sufficient disclosures under Rule 26(a)(2)(C)). Where courts have concluded that an expert disclosure is deficient under Rule 26(a)(2)(C), the disclosures almost uniformly contain no information whatsoever about the expert's opinion. *See e.g. Dale K. Barker Co. v. Valley Plaza*, 541 Fed.Appx. 810, 815 (Sept. 17, 2013) (excluding an expert where the plaintiff "did not disclose a single expert opinion"); *Robinson v. HD Supply Co.*, 2013 U.S. Dist. LEXIS 155196, *6-8 (E.D.Cal. Oct. 29, 2013) (noting that mere reference that expert would testify about a plaintiff's "medical diagnoses and/or treatment" was insufficient).

Fisher provided Bar J S&G with a summary of the testimony that Mr. Moehn will give at trial.  *See* Merriam Webster's Collegiate Dictionary 1179 (10th Ed.1993) (defining "summary" as an "abstract, abridgment, or compendium...."). This is all that was required by Rule 26, and the Court should thus conclude that Fisher's disclosures were sufficient.

### i.    Any Deficiency in Fisher's Disclosure Was Justifiable Due to Ambiguity in Rule 26(a)(2)(C)

Even if the Court were to conclude that Fisher's disclosures were inadequate and that they do not provide the level of detail required by Rule 26(a)(2)(C), the Court should nevertheless conclude that Fisher's disclosures are adequate as any deficiency in Fisher's

disclosure was the result of the ambiguity of Rule 26(a)(2)(C) and any deficiency was cured by Fisher's disclosures during the course of this litigation.  Bar J S&G has *already* deposed Mr. Moehn regarding Fisher's damages, and had a full and fair opportunity to elicit testimony about the basis of Mr. Moehn's testimony.  Having deposed Mr. Moehn back in October 2015 about the very damages testimony that Bar J S&G now seeks to strike, Bar J S&G's claim that it does not know the basis of Mr. Moehn's testimony is simply untrue.  Rule 26(a)(2)(C) is concerned only with disclosure, and Fisher long ago disclosed to Bar J S&G the basis of Fisher's damages testimony.  Moreover, Bar J S&G's assertion that it should not be forced to depose Mr. Moehn to ascertain the basis of his testimony is nonsensical given that Bar J S&G has *already* deposed Mr. Moehn on these issues.

### ii.    Any Deficiency in Fisher's Disclosure Was Harmless

Even if the Court were to conclude that Fisher's disclosure were deficient and not cured by Fisher's supplementation, the Court should nevertheless permit Mr. Moehn to testify as any defects in Fisher's disclosures were harmless. *See* Fed R. Civ. P. 37(c)(1) (providing that improperly disclosed testimony should be allowed if "the failure was substantially justified or harmless").  In determining whether Fisher's disclosure was harmless, the Court can look to an "array of factors, including (1) the surprise to the party against whom the witness was to have testified, (2) the ability of that party to cure that surprise, (3) the extent to which allowing the testimony would disrupt the trial, (4) the explanation for the late disclosure, and (5) the proponent's need for the challenged testimony." *Scott Timber, Inc. v. U.S.*, 93 Fed.Cl. 221, 226 (Fed.Cl. 2010).  Here, there was no prejudice to Bar J S&G as a result of Fisher's allegedly deficient disclosures.  Bar J S&G has already deposed Mr. Moehn on the topic of damages,  Mr. Moehn's disclosed testimony is not a surprise (and was in fact already covered at his 30(b)(6) deposition).  There is thus no prejudice or disruption of trial that will flow from Fisher's disclosures.  Further, Mr. Moehn's testimony regarding damages is an essential aspect of Fisher's case, and exclusion of Mr. Moehn's testimony due to a good faith disagreement regarding the scope of Rule 26(a)(2)(C)'s requirements would be unfair to Fisher's right to have

its claims heard. *See id.* (concluding that technical violation of Rule 26(a)(2)(C)(i) without a showing of harm did not justify exclusion of expert's testimony). This is a not a situation where Bar J S&G learned of a novel expert opinion or theory long after the expert disclosure deadlines, and this is thus not a situation in which exclusion is a proper remedy for any deficiency in Fisher's disclosures. *See Luke v. Family Care and Urgent Medical Clinics*, 323 Fed.Appx. 496, 498 (9th Cir. 2009) (excluding expert opinion that was three months late *and* "presented a new theory as to a key element" of the plaintiff's claims).

## CONCLUSION

Striking the factual testimony of Mr. Moehn is not appropriate.  To the extent that expert testimony is even required on Fisher's damages, Fisher adequately disclosed Mr. Moehn as an employee expert. Mr. Moehn had no obligation to provide an expert report, Mr. Moehn's testimony is within the scope of his personal knowledge, and Bar J S&G has already deposed Mr. Moehn on the topic.  Striking or limiting Mr. Moehn's testimony is unnecessary, and the Court should deny Bar J S&G's Motion to Strike.

Respectfully submitted,

MODRALL, SPERLING, ROEHL, HARRIS
    & SISK, P.A.

By:  */s/ Jeremy K. Harrison*
    Timothy C. Holm (tch@modrall.com)
    Jeremy K. Harrison (jkh@modrall.com)
    Post Office Box 2168
    Bank of America Centre
    500 Fourth Street NW, Suite 1000
    Albuquerque, New Mexico  87103-2168
    Telephone: 505.848.1800

    *Attorneys for Defendant*

I HEREBY CERTIFY that on the 28TH day of June, 2017, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

      Douglas A. Baker, Attorney for Plaintiff, dbaker@atb-law.com
      Ryan T. Jerman, Attorney for Plaintiff, rjerman@atb-law.com

MODRALL, SPERLING, ROEHL, HARRIS
   & SISK, P.A.

By: */s/ Jeremy K. Harrison*
   Jeremy K. Harrison

*W2961761.DOCX*