IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

BAR J SAND & GRAVEL, INC.,
a New Mexico corporation,

    Plaintiff,

v.                                                                                                    No. Civ. 15-228 SCY/KK

FISHER SAND & GRAVEL CO.,
a North Dakota corporation, doing business
in New Mexico through its division
SOUTHWEST ASPHALT & PAVING,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendant Fisher Sand & Gravel Co.'s ("Fisher") Partial 12(b)(6) Motion to Dismiss. Doc. 101. In this motion, Fisher seeks dismissal of Counts II and III of Plaintiff Bar J Sand & Gravel, Inc.'s ("Bar J") First Amended Complaint. *Id*. For the reasons set forth below, the Court **grants** the motion and hereby dismisses Counts II and III with prejudice.

**I.    Background**[1]

The Exclusive Supply Agreement ("ESA") that the parties entered into on June 28, 2007 included a provision limiting the contact between Fisher and the Pueblo. This provision, which Fisher refers to as the "no contact" provision and Bar J refers to as the "no direct contact" provision, stated that:

> [Fisher] agrees that at no time will any of its employees, representatives or agents contact any federal or Tribal persons, agencies, or entities, including without

---

[1] The Court has provided the factual and procedural background of this case in its Memorandum Opinion and Order on Plaintiff Bar J's motion for partial declaratory summary judgment, filed on the same day as the present Order. Therefore, the Court will only provide the pertinent factual history relevant to the motion at issue.

> limitation the Department of the Interior, the Bureau of Indian Affairs, the Bureau of Land Management, or Pueblo Officials and Tribal Members about any topic or provision that relates to this Agreement, including, but not limited to, the severance, excavation, removal and sale of Material and processing of Material on the Premises, including the operation of a hot mix plant and a concrete batch plant.
>
> Should any Tribal members, representatives, or entities, including without limitation the Bureau of Indian Affairs, the Bureau of Land Management, or Pueblo officials, representatives, or tribal members, contact [Fisher] about any topic or provision that relates to this Agreement, including, but not limited to, the excavation, removal and sale of Material and processing of Material on the Premises, including the operation of a hot mix plant and a concrete batch plant, [Fisher] agrees to immediately contact [Bar J] and relay to [Bar J] in full detail the communication. Further, [Fisher] designates [Bar J] and its representatives as its sole and exclusive agent in dealing with federal agencies and their representatives, and with Tribal members, representatives, and officials, and in representing [Fisher] in any dispute before the Pueblo.

ESA ¶ 3 (hereinafter "Section 3 of the ESA").

In its first amended complaint, Bar J alleges that Fisher breached Section 3 of the ESA in mid-October 2014 when it contacted the Pueblo "about the possible viability of Fisher entering into a lease on the gravel reserve directly with the Pueblo." *See* Am. Compl. ¶ 37 (Doc. 38). Bar J further alleges that Fisher intentionally hid this contact with the Pueblo from Bar J until November 24, 2014. *Id*. ¶ 38.

In Count II, Bar J seeks a declaratory judgment that Fisher's direct contacts with the Pueblo "about the potential viability of Fisher entering into a lease directly with the Pueblo is a violation of the ESA." Doc. 38 ¶¶ 77, 79. Bar J further seeks a judgment "prohibiting further direct contact by Fisher with the Pueblo pertaining to excavation, processing, sale or removal of materials or asphalt." *Id*. ¶ 79. In Count III, Bar J asserts a breach of contract claim for damages, including punitive damages, arising from Fisher's breach of the ESA "by contacting the Pueblo directly to seek its own lease and/or permission to continue to remove and sell Material outside of the ESA." *See id*. ¶¶ 80-84.

**II.     Analysis**

Fisher argues that Counts II and III should be dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6). Fisher contends that Section 3 of the ESA is unenforceable as a matter of law because it is "unlimited in temporal and geographic scope." *See* Doc. 101 at 1. "[T]o withstand a Rule 12(b)(6) motion to dismiss, a complaint must contain enough allegations of fact, taken as true, to state a claim to relief that is plausible on its face." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). In ruling on a motion to dismiss, the Court "accept[s] the well-pled factual allegations in the complaint as true, resolve[s] all reasonable inferences in the plaintiff's favor, and ask[s] whether it is plausible that the plaintiff is entitled to relief." *Diversey v. Schmidly,* 738 F.3d 1196, 1199 (10th Cir. 2013) (internal citations and quotation marks omitted).

In its previous ruling, the Court determined that the ESA was not renewed and therefore expired at the end of the initial term on June 28, 2012. As Bar J acknowledges in its response brief, Counts II and III of Bar J's amended complaint are premised on factual allegations "that Fisher contacted the Pueblo during the ESA's renewal term." *See* Doc. 110 at 9. Having decided the ESA was no longer in effect in 2014 when Fisher contacted the Pueblo, Counts II and III cannot be premised on the existence of a renewed ESA at the time of the contacts.

A separate question exists, however, as to whether Section 3 of the ESA survived the expiration of the ESA. The plain language of Section 3 of the ESA provides, "*at no time* will any of [Fisher's] employees, representatives or agents contact any federal or Tribal persons . . . ." ESA ¶ 3 (emphasis added). Thus, the Court must ask whether Fisher remained bound by Section 3 of the ESA even though the ESA, itself, was no longer in effect in 2014 when Fisher contacted the Pueblo. Although Bar J contends in its response that the Court need not decide this question

for purposes of deciding the motion, Bar J states that the Section 3 of the ESA "is unambiguous as to duration – because 'at no time' means 'at no time'." Doc. 110 at 10. Bar J's position therefore appears to be that Section 3 of the ESA is unlimited in duration. This is consistent with Bar J seeking a judgment prohibiting Fisher from all "further direct contact" with the Pueblo in Count II of its amended complaint. Doc. 38 ¶ 79. On its part, Fisher argues that Section 3 of the ESA is unenforceable because it has no temporal limitation. *See* Doc. 101 at 6.

"Broadly speaking, any bargain or contract which purports to limit in any way the right of either party to work or to do business, whether as to the character of the work or business, its place, the manner in which it shall be done, or the price which shall be demanded for it, may be called a bargain or contract in restraint of trade." *See* 6 Richard A. Lord, Williston on Contracts, § 13:1 (4th ed.). "It is now uniformly agreed that in order to be valid, a promise imposing a restraint in trade or occupation must be reasonable." *Id*. § 13:4. "A covenant imposing a reasonable restraint will generally be held to be a valid exercise of the parties' freedom to contract." *Id*. "Whether there is a reasonable restraint depends on the facts of a particular case and is a matter of law for the courts to decide." *Bowen v. Carlsbad Ins. & Real Estate, Inc.*, 1986-NMSC-060, ¶ 4, 724 P.2d 223 (internal citation omitted). "In determining reasonableness, courts consider such factors as the nature of the business, its location, the parties involved, the purchase price, and the main object of the restriction." *Id*.

Section 3 of the ESA contains time and geographic limitations on Fisher. As such, the basic test for determining if Section 3's limitations are permissible is "whether the restraint as to time and territory is necessary for the protection of the promisee [Bar J], but neither oppressive on the promisor [Fisher], nor injurious to the interests of the general public." *See* Williston § 13:5; *see, e.g., Winrock Enterprises, Inc. v. House of Fabrics of New Mexico, Inc.*, 1978-NMSC-

4

038, ¶ 15, 579 P.2d 787 (finding restriction preventing party from establishing a competing business within a certain radius was valid because it was "reasonably limited in time and place and was subsidiary to the main purpose of the lease agreement."); *see Nichols v. Anderson*, 1939-NMSC-028, ¶ 10, 92 P.2d 781 ("an agreement to refrain from engaging in a certain business or profession within reasonable limits of time and place is valid if subsidiary to other legitimate purposes . . .").

Although the parties find little common ground in their interpretation of Section 3 of the ESA, neither disputes that Section 3's purpose was to protect Bar J's indirect business relationship with the Pueblo. *See* Doc. 110 at 1, 10 (Bar J stating that Section 3 is a restrictive covenant that served to "protect Bar J S&G's legitimate, indirect business relationship with the Pueblo"); *see also* Doc. 101 at 6 (Fisher noting that the apparent purpose of Section 3 is to "prevent Fisher from undercutting Bar J S&G's middleman status"). While Fisher contends that Section 3 is an unreasonable restraint for a number of reasons, the Court focuses on whether the lack of a temporal limitation is unreasonable, and concludes that it is.

In its amended complaint, Bar J alleges that the length of the lease between the Pueblo and Bar J Trucking necessarily limited the duration of the ESA itself. *See* Am. Compl. ¶ 13 ("Fisher and Bar J S&G also agreed that if the Pueblo (or any government or agency) terminated the Lease for any reason or no reason, or if the Lease was not renewed, the ESA would be ended as of that point." (emphasis removed)). The ESA expressly included language to this effect:

> [Fisher] agrees that the express condition precedent to any and all provisions in the Agreement is the continued existence of the Lease. Therefore, should the Pueblo or any governmental agency with jurisdiction suspend or terminate the Lease for whatever reason, or for no reason, [Bar J] and [Fisher] will be bound to the terms of this Agreement only to the last date the Lease is in effect.

ESA ¶ 2. The ESA further provided that the initial term of the lease between Bar J Trucking and the Pueblo expired on January 18, 2015. ESA ¶ 4.

Because the length of the lease and accompanying business relationship Bar J sought to protect expired no later than January 18, 2015, the Court concludes that it would be unreasonable to expect Fisher to refrain from contacting the Pueblo indefinitely. In other words, it would be unreasonable to restrain Fisher from contacting the Pueblo even after the lease expired – i.e., after the end of the business relationship between Bar J and the Pueblo. Thus, to the extent Bar J argues that Section 3 applies indefinitely as a restriction on Fisher's contact with the Pueblo, the Court rejects this argument and concludes that such a restraint is unreasonable and, therefore, invalid.

The Court recognizes that Fisher admits it contacted the Pueblo in October 2014, prior to the end of the lease between Bar J and the Pueblo. This invites the question of whether, instead of declaring Section 3 invalid in its entirety due to its indefinite nature, the Court can modify Section 3 to impose a reasonable no-contact period.[2] Stated differently, can the "at no time" language in Section 3 be limited to "at no time during the lease"? The Court is unable to do so, however, for two reasons. First and foremost, Bar J did not raise this argument in its briefing. In fact, Bar J has strongly taken the position that the Court must enforce the ESA as written. *See*

---

[2] As an example of modifications of unreasonable restraints of trade, in *KidsKare, P.C. v. Mann*, 2015-NMCA-064, ¶¶ 9 - 15, 350 P.3d 1228, the New Mexico Court of Appeals affirmed the district court's modification of a covenant that prohibited a dentist from opening a dentistry practice within one hundred miles of any of his former employer's offices for a time period of one year. The district court found the one hundred mile restriction to be overbroad and therefore, unenforceable as written. *Id*. ¶ 4. "As its remedy, the district court reformed the distance provision . . . by reducing the radius to thirty miles, finding that the covenant was thus enforceable." *Id*. The Court of Appeals upheld the modification for two primary reasons: (i) the agreement between the parties provided that all provisions not found to be invalid, in whole or in part, were to remain intact and enforceable; and (ii) the agreement specifically allowed for the amendment of any provision found by a court to be overbroad or otherwise unenforceable. *Id*. ¶ 12. The Court of Appeals concluded that "[r]eformation of unreasonable clauses was an aspect of the bargain of the parties and consistent with their mutual intent as expressed by the[ir] employment agreement. *Id*.

Doc. 110 at 8 ("there is no justifiable reason for the Court to interfere with the contract that Fisher entered into"); *id*. at 11 ("Courts must enforce the contracts as written, unless they are illegal or otherwise enforceable as applied"). The Court therefore cannot *sua sponte* modify the ESA to impose a reasonable no-contact period.

Second, even if the Court were to consider modifying Section 3 despite Bar J not raising this argument, there does not appear to be any language in the ESA indicating that, as part of their bargain, Bar J and Fisher agreed that the ESA's provisions could be modified if a court found them, in whole or part, to be unreasonable, overbroad, or otherwise invalid. The severability provision of the ESA only states that if any of the ESA's provisions are found to be invalid, "such invalid provision shall be severable, and such invalidity shall not impair the validity of any other provision." ESA ¶ 40. In addition, the ESA includes a provision that "neither it nor any part of it may be changed, altered, modified or limited orally or by any agreement between the parties unless such agreement is expressed in writing, signed by [both Bar J and Fisher], and approved by the Pueblo and the Secretary, if such approval is required[.]" ESA ¶ 28. The Court therefore finds that it must strike Section 3 in its entirety.

### III. Conclusion

Based on the foregoing, Fisher's Motion to Dismiss (Doc. 101) is **granted** and Counts II and III of Bar J's first amended complaint are hereby dismissed with prejudice.

**IT IS SO ORDERED**.

_____
UNITED STATES MAGISTRATE JUDGE
Presiding by Consent

7